All right, thank you. We'll call the matter of Virgin Islands Conservation Society versus the Virgin Islands Board and I'll call upon Mr. Simpson to go forward for the appellant. Thank you, your honor. Good morning. May it please the court. Andrew Simpson on behalf of I would like to reserve three minutes for rebuttal, if I might. All right, that is granted. And Mr. Simpson, I'm going to ask a question and then yield to my colleagues for most of your argument. I may pop in at some point, but as a threshold matter, the panel may be interested in inquiring on the subject of Article III jurisdiction here. Of course, we all know it's your burden to establish any parties, a burden as a plaintiff, as a filing party to establish Article III standing. Yet your statement of jurisdiction in your brief, which appears at the very beginning of the brief, really talks only about the timeliness of the appeal and whether it was an appeal from a final order. Did you discuss standing anywhere? I believe I did in the brief, your honor, where I think I party under the Coastal Zone Management Act because it had appeared at the initial Coastal Zone Management hearing and also submitted written comments. I can't remember the exact code section underneath the CZM Act, but that does provide that you have a right to appeal from an adverse decision. That's Section 913. That may give you standing before the territorial courts, but we're concerned with Article III. I'm sorry, Chief, I'll let you go. No, I was going to yield to you and Judge Mady. Go ahead. Well, we understand, and it may be that you're an aggrieved person under local law, particularly under the definition in 12 Virgin Islands Code 902A, but we've got to be, we need to be, we need to understand and it needs to be shown that you have standing before this particular court under Article III, and I know you're aware of the requirements of Article III standing, including injury in fact. What is your client's injury in fact here? Well, my client is an environmental advocacy organization that represents individuals and communities in the Virgin Islands. It has appeared in numerous cases in the Virgin Islands and in this court advocating on behalf of the environment of the Virgin Islands, and I really don't think there is an Article III issue here anyway because this is coming up through, this is still under the court's continuing jurisdiction of an appeal from the appellate division under the old jurisdiction of the court. Well, that may or may not be. We can get into that in a minute, but let's assume that it's not. You know, is there really a concrete and particularized injury for your particular client? Your Honor, I'm... And listen, I know this is a curveball. This is not, we didn't send you a letter. It wasn't dealt with in the brief, so if you don't know... And that is our oversight, counsel. I'll certainly take responsibility for that. We don't by any means want to sandbag you here, but we are charged with the responsibility of always examining our own jurisdiction and determining that we have it. And while you're certainly correct that the lengthy, lengthy procedural history here reaches back and well before indeed the creation of the Virgin Islands Supreme Court and the funding of the Supreme Court and its own assertion of jurisdiction, that doesn't obviate the need for us to determine Article III jurisdiction. So, it may be that we want to pursue some additional questions here that my colleagues have, but we can always leave open to the possibility of a supplemental briefing on the issue. Excuse me, Judge Chigares, I just wanted to say a mea culpa there on my part for not having alerted counsel to this. Well, thanks, Chief. I mean, I don't want to cut you off either. I mean, you and Judge Meade pursue this. Thank you. Okay. Well, I mean, I'm directing this to Mr. Simpson. If you really feel like, hey, I've got to give this some thought, that's not an inappropriate answer at this point. I really do need to think about it and the standing of an environmental organization. I think there is plenty of case law that would establish that standing, but I haven't looked at that. It's never come up. I've represented a number of cases and it's never come up. So, I am kind of surprised. And counsel, we appreciate that, as we said, that this is something that we hadn't talked about earlier and hasn't come up in the prior stages. And that is largely explainable, as Judge Chigares indicated, by the fact that we are now in an Article III court. And so, the prior aspects of this proceeding would have been looked at under a different standard, the one created under 914A. So, as you give additional thought to this, and I think we'll certainly welcome that, consider how either VIX itself or individuals represented by VIX satisfy the four-part test for standing that is familiar in environmental actions, going back to at least Lujan. And part of that will, and perhaps we'll flesh this out, I suspect we will in written questions, part of that will also deal with whether or not merely participating in an agency proceeding is sufficient to grant Article III standing. There's certainly the decisional law about whether or not, if Congress creates a wider zone of interest for participation in a regulatory action, whether that alone is going to create the kind of injury, in fact, that can be fairly traced to a redressable injury will suffice in Article III court. So again, I know this is well beyond what you're prepared to discuss today, but I just wanted to put those thoughts in your head for further conversation later on. Thank you. And Mr. Simpson, I know that you have litigated, and rather that the society has litigated in the federal courts of the Virgin Islands, and I believe before us, that something that I'm not aware of just has to do with your client. And that is, are you a dues-paying organization? Are members, how is membership constituted? It is a dues-paying organization. There are individual members, and there are also environmental organizations within the territory that are members, that are dues-paying members, such as the St. Croix Environmental Association and the Environmental Association of St. Thomas and St. John. Okay, thank you. I just had a follow-up on something I touched on before, Mr. Simpson. You rightfully pointed out about where an appeal from the Appellate Division would go, and I guess that would depend on timing is one thing. But as I understand it, if a case from the Appellate Division is a case remand, then it would, if this particular case were a case remand, wouldn't the appeal go to the Supreme Court of the Virgin Islands? If a record remand, perhaps it is properly here. Maybe you can address which path you think is appropriate. Yes, Your Honor, and that actually came up early on in the proceedings in the Appellate Division. Initially, the Appellate Division dismissed for lack of jurisdiction, thinking that the Supreme Court had, the Virgin Islands Supreme Court had jurisdiction. Subsequent case law, I think, both in this court as well as from the Virgin Islands Supreme Court suggested otherwise, and we moved to reconsider, and the District Court, the Appellate Division agreed that it did have jurisdiction. Once it reached the, once it then did a record remand, not a case remand, it remanded back to the CZM Committee to make factual findings, and I, as I recall, the first Appellate Division decision specifically referred to the need to have those factual findings so that it could complete its review. Well, I'm not so sure how clear that is. You know, I, it was a pretty, it was a pretty direct opinion about how they basically abdicated, they didn't, they abdicated their responsibilities. I'm talking about the Board now. They didn't do the weighing, and likewise, so it might have been more than just a, you know, make some additional findings or support some findings. I think it could be argued that it was a straight out, you punted, we're sending it back, we can't do anything with this. I think if that were the case, then it would not have accepted jurisdiction on the subsequent, after the remand came back. So I think the Appellate Division thought that it was a record remand, and I think, I don't, I don't believe that there was ever an argument made that that was to the contrary by any party. Obviously, we're talking about subject matter jurisdiction, that doesn't matter, but I think that does reflect the understanding of the Court. Okay. All right. Counsel, can I pick up on that question briefly, that Judge Figueres is inquiring on, and, and I'm not, I'm not sure that this is covered fully in the briefing, but I wanted to talk about the 2011 remand. So as I understand it, the Superior Court sends this matter back to the Committee, whatever happens after that remand. So they get it back a second time, the Superior Court says, I still don't think you did it, go back. It goes back to the Committee, and it doesn't, I can't see anything in the record as to what happens to that remand order. So I'm wondering if that's something you have any insight into. My recollection is that there was not a further response from the CZM Committee. I could be wrong about that. I would have to check, double-check the record on that. It was our position, it was Vic's position, that the CZM Committee had complied with the mandate. We argued to the Superior Court that the only thing that should be done was that it should be sent to the Appellate Division for it to reach a subsequent decision. The Superior Court never ruled on that motion. We had already filed the findings with the Appellate Division, and I think the Appellate Division thought that what it received was compliant with its remand order and proceeded to reach a decision in the second decision. Right, and you see where that creates some potential trouble here, that if it goes back to the Superior Court and then isn't the matter still sitting before the Committee, and I agree with you that the Appellate Division doesn't deal with that question, but it is out there, right, because it affects how it winds up here. It's only here because the Appellate Division has rendered that subsequent decision, but it's reviewing a matter that it seems from the record is actually still back before the Committee as a result of the 2011 remand order. All right, we actually briefed that in the Superior Court because we don't think the Appellate, I'm sorry, the Superior Court had the authority to do anything other than comply with the mandate, which it was remand this to CZM for a decision, and so that the Appellate Division would have what it needed to do to reach a decision. So, we took the position and argued to the Superior Court without ever getting a ruling that it did not have the jurisdiction to be determining whether or not CZM's action was compliant with the Appellate Division's mandate, and that that was an issue for the Appellate Division, and I think the Appellate Division always has continuing jurisdiction to enforce this mandate and to accept the CZM findings if it finds that they were sufficient. I think what's perplexing to me, and you touched upon it, is no one seems to address that question. So, I agree with the arguments you're making may have been available, but it's not clear to me that anyone ever accepted them, considered them, let alone accepted them. There are some assumptions as to what must have happened, but on the bare record, it does appear that there is, it's not clear what the Appellate Division was doing in this matter when it issued its decision. So, again, I don't want to push it too far onto an issue that may not have been the focus of your presentation, and I think I understand your position on this question. Thank you, Your Honor, and I, of course, want to answer any question you have. I agree with you, the record is silent on it, so we are trying to figure out what happened without a record to allow us to do so. Shall I proceed? Yes, please. I think the fundamental question, if we get past jurisdiction, is what does it mean for a permit to be approved, to be deemed approved? It is Vic's position, and we think it is founded in sound public policy, that what that means is that the permit applicant is in no better position than if it had received a favorable vote from the CZM committee. So, what does that mean from a practical standpoint? Well, I think it means there's still two different ways that a permit application can be challenged after a favorable vote of a committee. First, if the application doesn't meet the requirements of law, such that it shouldn't even really have been before the committee, or that because it doesn't meet the requirements of law, the CZM committee has no choice as a matter of law but to deny the permit application, that review should also apply in this situation. And just to give you an example, the CZM Act requires that an environmental assessment report, or EAR, be submitted as part of an application. Theoretically, an applicant could submit a permit application without an EAR, or with a very grossly deficient EAR. The DPNR could conclude that the application is complete, and that could go to the CZM committee. And if they don't have a quorum to have a deciding vote after a public hearing, that would be deemed approved. And I submit that that deemed approved permit, just as if the committee did have a quorum and did vote, would be subject to review to say, this never should have even reached the committee, and the permit is invalid and should be vacated. The second way that it could come before, still be reviewed if it was a deemed approved permit, is in the situation where there was no way that, granting discretion to the committee, that it could have approved the permit as a matter of law. So I think what that means as a practical standpoint is that if there is conflicting testimony and evidence at the hearing, that gets resolved in the favor of the permit applicant, and presumably that results in an affirmance of the permit. On the other hand, if there are issues where there's only evidence against the application, and the applicant has not addressed those, I think that could result in a reversal of the permit on the evidence before the committee, because the committee itself could not have granted, if it was voting, could not have granted approval of the permit. The Board of Land Use Appeals and Golden Resorts essentially say, no, that's not how it works. It's carte blanche. If the board can't get a quorum, then no matter what's wrong with this permit, it gets approved and it cannot be challenged on appeal. I think that's bad public policy. I think it invites mischief, and I think it, because all you have to do to get an approval through is to have a member of the CCM committee not show up and deny the committee a quorum at the vote, which is usually coming very close to the end of the 30 days for a decision after the public hearing. I think that's just contrary to what the statutory intent reflects, which is clearly to protect the environment. The solution I offer is consistent with the language, because all it says is the permit is deemed approved, and just as a vote of the committee would deem it approved. So I submit that any issue that could be raised upon a proper vote of the committee on appeal can be raised on a deemed approved permit, with the exception that there may be less room to challenge decisions where it comes down to the discretion of the committee. So I think that is the fundamental issue in this case, and that if the court agrees, what should happen is the matter should be remanded, the permit should be vacated, and it should be remanded to the CCM committee with directions to dismiss the case, and because once a permit is denied, the applicant must wait 120 days before it can submit an application for long-term counsel. Has any work begun on this project? No, Your Honor, which is the subject of a separate action that VIX has pending, which I described in the brief. That case is under abeyance, awaiting a decision in this case, a final decision in this case, but that is very much an issue in that separate case. The other issues we've raised in our brief, which I'll touch on briefly, I think they're adequately brief, the waiver, whether or not a statutory benefit can be waived. I think the recent jurisprudence of the Virgin Islands Supreme Court shows that indeed, if it is a benefit of the person who's waiving the benefit, the statutory benefit can be waived. That is very solidly supported by U.S. Supreme Court precedent, and I think it's just, as I say in the brief, quoting the 11th Circuit decision, it's a matter of good old common sense. If an applicant realizes that my permit might be denied if I don't give the CCM committee more time and submit additional information, it's to the applicant's benefit to be able to say, yes, let me waive that benefit and have more time, and I'll gain approval. What about the scope of the waiver, though, here? It seems that you would want us to construe it as really open-ended. Didn't they come up with dates in that letter? They came up with dates that were contingent upon, that were aspirations, if anything. The Golden Resort said it is my hope that, our hope that we will submit responses to the public comments by a certain date and that it is our hope that CCM would reach a decision within seven days of that specific date. Well, Golden didn't submit its responses by that specific date and clearly did not view that as a deadline. And so, I do think there, I don't think there's any legitimate dispute that Golden requested a waiver of the deadline. And that waiver was granted. There may be a dispute as to how long that deadline was extended, and I think that is something that CCM would have to resolve. But where the dispute is about the length of that, I don't think that should result in a deemed approved permit. Because the statutory penalty, if you want to call it that, of deeming the permit approved is premised upon that 30-day deadline. And Golden Resorts clearly waived that deadline in its letter. It says we want a waiver of that deadline and there's only one deadline in the statute they cite. Does it matter that Golden follows up with their February 9th letter that says, hey, just so we're clear, this isn't a general waiver, which is kind of what you're saying. It is a general waiver. It doesn't matter because that's after the fact. They've already, they've corrected it. If they're correct, that's after the deadline, the 30-day deadline has passed. And so it cannot, you know, I'd love to be able to take one position before the deadline and then take a contrary position after the deadline. But that's not fair and that's certainly not fair to the CCM Committee, which is the committee that is entitled to deference on this. And as I predates all of this, where Golden Resorts asked for an extension of the deadline and very specifically says what the deadline should be is not aspirational. And CCM Committee had that example of how Golden Resorts could request a specific extension in front of it. It concluded the subsequent request was not that. And I think that's entitled to a great deal of deference and reflects the actual practice before the committee. So if there are no further questions of the bench, I would yield my time. Gentlemen, any further questions of Mr. Simpson? None. Thank you. None. Thanks, Chief. All right. Thank you. We'll have you back on rebuttal, Mr. Simpson. Mr. Moore, on behalf of Golden. Yes, Your Honor. Thank you. I'd like to greet this august and honorable panel of the United States Court of Appeals for the Third Judicial Circus. And I also am grateful that I've been given an opportunity to argue as well. We are some concerns about the two opinions from the appellate division of the district court. And the one opinion that came out in 2000, December of 2007, it appealed that my client did not waive its entitlement to a decisional hearing within 30 days of the public hearing. But it also remanded it not to the board of land use appeals, because the board of land use appeals issued the conditions both or the general and specific conditions. It remanded to the superior court with the instructions that the superior court remanded to the St. Croix committee, CZM committee, for them to provide their particular findings and conclusions as they were initially statutorily required to do. Well, when the committee went maverick and we had to file appeals with the board of land use appeals, that responsibility went to the board of land use appeals under 914 subsection D. And the board of land use appeals carefully considered the documents that had been previously provided on behalf of the St. Croix committee and on the documents that have been provided on behalf of Gordon Resorts. And in its findings of fact and conclusions of law, which are, I believe, at page 93 in volume one, it begins, it has paragraphs 24 through 26 of those findings of facts in which it says it had sought the participation of the parties in preparing proposed findings of facts, but also in preparing the general conditions and the special conditions to the actual permit that was issued. And there were serious conversations and discussions between counsel for the CZM committee and my office regarding what those special conditions should be. And the board of land appeals essentially adopted all of them. And some of those findings and conclusions came from the initial findings and conclusions and the analysis submitted by the staff of the CZM. And that was submitted on May 20th of 2004 in advance of the actual decision hearing that was May 26th of 2004. So the board of land use appeals had benefit of this particular findings and facts and conclusions that the appellate division of the district court remanded to the superior court for the superior court to go get what it already had from the CZM committee staff. And what happened as I recollect was that the CZM staff, it had new CZM members, it had new staff people, the folks had retired after all this time. And so they devolved back to the initial findings that were prepared by the staff May 20th, 2004. And that's, I believe what was resubmitted. And it appears that when the appellate division of the district court rendered its opinion in April of 2020, that it still has some misconception in the language to the effect of saying, nonetheless, under the current statutory scheme where the committee fails to take timely action on a developer's application, the CZM act endorses the summary issuance of a coastal zone development permit by default without committee review or input. That was clearly not the case. The first time it went up on appeal and from the decision of the territorial court in 2005, it went up on appeal in 2006, when they rendered their opinion, the appellate division of the district court rendered its opinion. And in 2007, it was laboring under the misconception that the CZM committee staff had not submitted, had not vetted the application. And that was the misconception that was repeated in its opinion of 2020. They did use the staff opinion. They did vet it. They did use it in deciding what the conditions should be, both general and special conditions. And every court up to this one has found that a request for an extension was not a waiver of this very serious statutory right and obligation. It's not just the environment. It's balanced against the rights of the developer. And if what happened, as in this case, that the developer's rights are never It is a mischaracterization of the law to entertain the belief that this developer was treated fairly and properly over the course of this case. He never waived it. He asked by a letter to extend the CZM committee allowed, after the public hearing, allowed the public an additional seven days to write letters and to supplement their concerns and to get those to the committee. They were extensive. There was a very extensive objections. And the developer, Golden Resorts, wanted adequate time to specifically address each one of those particular objections. And they did. It was admitted to the committee, I believe, on February 6th. They asked for an additional week. And I think February 6th was the date that they submitted those written responses. And then the committee set up this date on May 26th. Actually, there was an intervening date that my client came down for, a specific time to be here to attend the decisional hearing. And they had quorum problems. They could have had quorum problems for years. And that would not have addressed the rights of the developer. So it was necessary for the statute to have that provision at 9-10 to where it had to be addressed within 30 days of the public hearing. To ask you a question, counsel, is it default? Does this happen much with the committee, in your experience? Yes, Your Honor. I'm sure Attorney Simpson can tell you as well. In my experience, I believe this is the only time. Because in my experience, this is the only permit I received by default. So let me be specific. I will not generalize some things that I'm aware of that I'm not a part of. Okay. So, Your Honor, I just wanted to make sure I highlighted that confusion at the Appellate Division of the District Court. I also note in your preliminary comments to Mr. Simpson, the standing issues. I did at some point in time raise some issue about that. It may have been over the record. I'm trying to recollect because of my materials were reclaimed by my client for him to use in other cases. But I do know, for instance, that when the first remand order came out of the Appellate Division of the District Court, I think I tried to appeal and the merits division of your court correctly noted that a remand is not something like a final order. And so, therefore, I had to dismiss that appeal and participate in this situation that didn't go to the Board of Land Use Appeals, who they vetted it, put together all the conditions. They were the ones that this remand should have gone to. But instead, it was sent to the committee, St. Croix Committee, and the St. Croix Committee really didn't do anything. You know, I asked your adversary, was this a record remand or a case remand? And I'm not sure if I'm throwing your curveball here. If I am, I apologize. No, they already made the significant ruling that my client did not waive. That was done both times in 2007 and 2020. But they remanded it for completion of a record that was already complete, that already had the committee's findings and analysis. And so, I think I would treat it more as a remand on the record. Okay. Judge Mady, do you have questions of Mr. Moore? I do not, Chief. Thank you. All right. Mr. Moore, you have about a minute left. Is there anything you'd like to add or wrap up? Yes, Your Honor. I would like to add also the opportunity to make a supplemental brief on the standing issue. Because, you know, it's more so the rules and statute for the creation of the Supreme Court were those laws set in to place where the Supreme Court would start taking appeals from matters and that the ones before the appellate division would remain with the appellate division. So, there's a bit of a briefing issue I would request as well. Yeah. The panel will be issuing an order and certainly will indicate in that order when any supplemental memoranda or briefing should be filed. We'll determine whether or not we want it to be sequential or responsive in nature. But every party will have an opportunity. Everyone who's party to this appeal will have an opportunity to file. Thank you, Your Honor. All right. Thank you very much, Mr. Moore. Mr. Clement? Good morning, Your Honors. Assistant Attorney General Ian Clement, Virgin Islands Department of Justice on behalf of the Board of Land Use Appeals. I would like to, my esteemed colleague Mr. Moore covered a lot of what I was going to say, but I want to drill down on the point regarding what happens when a permit is deemed approved. The CZM Act here in the Virgin Islands does not expressly provide for review. And when the permit is approved by virtue of statutory, yeah, then what happens is here, the, in order to, you know, in order for a court to come back then later and then review the case on the merits, it would render the deemed approved statute, which is Section 910d4, we render it meaningless because in any case where the, you know, the, there's no quorum, you can just kick it up to the Board of Land Use Appeals and then review it there as if it was before the CZM. And really the CZM is the entity in which the legislature has vested the power and it has the know-all and the staff to really go after and to look at these permits. What the permit is deemed approved, it has the ability to attach conditions and that was done in this case. You know, as my colleague Mr. Moore stated, it was hashed out between the parties and very specific and very general conditions were attached. In addition to that, even after a permit is deemed approved and conditions are instilled by the Board of Land Use Appeals, and as stated in the Appellate Division's 2020 case, under Section 913, CZM also has the ability to attach conditions. And so you have a balancing there of, you know, on one hand you have a permit that is approved in a timely fashion and that balances one interesting because of the developers and their investments. And then you have both the Board of Land Use Appeals and the CZM committees with the ability to attach conditions and to ensure that the environment is protected. So, you know, and so you have a balance between both goals there. And so rather than go back and review a permit as if it were decided as on the merits, as a matter of fact, if you go back and now vacate a permit that was deemed approved pursuant to the desires of the legislature to have these permits acted upon timely, you now rendered the statute, you know, the 910d4, you rendered that meaningless. And it is not the court's... Well, you haven't rendered it meaningless, right? I mean, I think what your adversary would say is you're giving effect to both provisions of the statute because the review provisions in 914.3 require a fulsome examination of what the committee did, whether it was arbitrary and capricious, it was affected by other errors in law, whether it was a violation of the Organic Act, on and on and on. So, you know, what is your best position regarding how you give effect to all of those responsibilities, if not for the board to say, well, listen, we have to look at all this. If it wasn't done, then it has to go back and someone has to look at it. The default can't insulate all of that review. Otherwise, we'd be reading the regs and 910 right out of the law. Well, I mean, yes, the board is looking at all of those facts and that part of a law in 910 and 914. But once, you know, once the board decides that the committee has not lived up to its statutory mandate, it's completed that part of its review. And as far as the facts, as far as balancing the section 914 gives it the opportunity to attach conditions, section 913 also gives CZM the ability to attach conditions. And so the environment there is protected by those parts of the statute. But if you're going to, you know, if you're going to go back and look at the merits as if it was decided on the merits, then what is the point of section 910d4? Because at any point in time, as I said, at any point in time, if you don't have a quorum or someone's absent for whatever reason, you just, you know, it's as if section 910d4 does not exist. So is your argument really that if a permit application is granted by default, it's basically bulletproof? Well, it's not bulletproof because the Board of Land Use Appeals has the ability, as I said, to attach conditions to that permit. In addition, you know, the express nature of the statute does not provide full review. And as Attorney Moore stated, you know, the appellate division on both occasions had all of the findings. It had the CZM findings. It had the Board of Land Use Appeals findings. In fact, all the conditions that were put before it. And it, we believe, rightly decided that it could not, you know, review the case on the merits. In addition to that, you know, I would submit that, you know, this appeal here presents, you know, issues of law, right? And this court in 1989 decision, in the Sugar Bay case, decided in a similar fashion that where the appeal presented an issue of law and the Conservation Society similarly presented issues regarding the substantive nature of their permit, that this would not address those issues. And I think that this is a similar situation as it was in that 1989 Sugar Bay case. Are there any other questions for Attorney Clement? None for me. Nothing further. All right. Thank you. If not, thank you very much, Mr. Clement. And we will hear from Mr. Simpson on rebuttal. Thank you, Your Honor. I don't think that the provision that allows conditions to be attached, which applies to a permit that is voted upon or one that is deemed approved, is sufficient to address a permit that is inadequate or permit application that is inadequate as a matter of law. Judge Mady raised the point that the application has to comply with the Organic Act. And if the permit is deemed approved but did not comply with the Organic Act, you cannot very well apply a condition that says you must comply with the Organic Act. It's subject to review based upon the record that was before the CZM. With respect to the remand and the factual findings developed by or adopted by the Board of Land Use Appeals, I think a couple things need to be pointed out. The Board of Land Use Appeals approved a permit for more hotel units than was requested in the application as ultimately submitted to the CZM Committee. So clearly, the review process did not work in this case. The bottom line is... Does that happen frequently, Counsel? This is the first time that I'm aware of that a permit has been deemed approved in the Virgin Islands. And I've been doing pro bono environmental work for 30 years now, and it's the first time I've encountered it, and I never heard of one prior to that. How about granting an application that actually gives more than was sought? I've never seen that happen, certainly in a permit that was upheld on appeal. It's just a kind of a bizarre situation, especially as I pointed out in the final section of the brief. We have a situation here where even as requested in the modification by Golden at the CZM level, for I think it was 571 rooms, their sewage treatment plant is inadequate. Their water supply is inadequate. And now you have a situation where the Board of Land Use Appeals has expanded the project beyond that. It's a very strange situation. The bottom line is the reason this permit has problems after being deemed approved and going before the Board of Land Use Appeals is because it was so deficient to begin with. And I would note that in 16 years of litigating this, there's been no defense and no answer to that section of my brief where I talk about all the inadequacies of this permit application. In the normal situation, to the permit application presents a proper application, a complete application, an application that addresses the cumulative effects of development and all of the requirements of the act. If that permit is deemed approved, when it goes up before the Board of Land Use Appeals, if it goes up before the Board of Land Use Appeals, there's very little for it to do because the record supports the issuance of the permit as deemed approved. The issue here is that it doesn't support the issuance of a permit, period. And the one thing that I tend to, I think we need to understand why the appellate division remanded for factual findings. It wanted factual findings by the recommendations of the CZM staff. It wanted the committee that is charged with making the determination to make those factual findings. In my opinion, that should not have happened. I think when you have a deemed approved permit, it should be reviewed on the record. As I've said, if the evidence is in dispute, then I would expect that to go in the favor of the developer. If it's uncontested and could not be granted as a matter of law, then it would go in favor of whoever's opposing it. I don't think there needed to be a record remand to make those factual findings. I can't say that it's an error of law to have done that. I just think it's a little bit of a strange situation. I think the Board of Land Use Appeals, the Superior Court, and then the appellate division should all have reviewed this on the record that was before the did the application as presented to CZM meet the requirements of the CZM Act? If yes, you get over that hurdle. If no, the permit is vacated. Then if it gets over that hurdle, the next question is, would the evidence as presented have allowed a CZM committee to grant this permit if it had had a quorum and voted on it? If the answer to that is yes, it's gotten over the second hurdle, and now it probably does have a bulletproof permit. But if the answer to either of those questions is no, then I think the permit must be vacated. Thank you. Thank you very much, Mr. Simpson, and thank you to Mr. Moore and Mr. Clement as well. The panel will, as I indicated before, issue an order which requests supplemental briefing received from all of you. The panel will discuss the scheduling of that, but you can anticipate receiving a directive forthwith in that regard. So, we'll not at this point be taking the matter under advisement. We will take it under advisement after receipt of the supplementals. In the meantime, we thank all of the council for your argument in this very tangled and ancient matter at this point. Well, let me just say that in the years that I've handled appeals from the Virgin Islands, it's not the first delayed matter I've seen come out of an appellate division decision where delay seems so frequently to have been an issue. Of course, it is probably a good thing for the islands and for everyone that you have now such an effective Supreme Court within the Virgin Islands and one that does act from what I have seen. I know all three of those justices and have had some input into their eventual receipt from Congress of authorization for certiorari appeal. This kind of delay will be a thing of the past at least once cases of this kind have wound their way through the system. And I hope there are not too many. I hope there are any others with this long a tail, if you will, to them. Thank you all very much.